REF #5597986

Lincoln Financial Group

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life**
**Insurance Company**
Service Office:
PO Box 2609
Omaha, NE 68103-2609
Toll free (800) 423-2765
Toll free Fax (877) 843-3950
www.Lincoln4benefits.com

March 31, 2020

GLANKLER BROWN
ATTN DON L HEARN, JR
6000 POPLAR AVENUE
SUITE 400
MEMPHIS, TN 38119

Re: Policyholder: Ajax Distributing Company of Memphis,
Policy Number: 00001004922000000
Claim Number: 1150128075
Claimant: Sherman Carter

Dear DON L HEARN, JR:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 10/30/2018. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To receive benefits under the policy issued to Ajax Distributing Company of Memphis, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

"Total Disability" or "Totally Disabled" will be defined as follows.
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

BENEFIT. The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period; if he or she:
1. is Totally Disabled;
2. is under the regular care of a Physician; and
3. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

©2020 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corpora
Affiliates are separately responsible for their own financial and contractual c

EXHIBIT
2

> OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

The policy has a 24 month Own Occupation Period which ended on 11/05/2017. Long Term Disability benefits were paid to 10/30/2018. In order to be considered Totally Disabled beyond this date, the medical documentation must support your client's inability to perform each of the main duties of any occupation for which your client is qualified. As such, in considering whether your client qualifies for Long Term Disability benefits beyond 10/30/2018, we evaluated whether your client would be restricted or limited from performing the main duties of any occupation for which your client is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 10/30/2018 forward, which was the focus of our determination.

**Summary of Initial Claim Filing**

As you know your client's claim was originally approved from 11/05/2015 to 10/30/2018 as we found your client met the definition of Total Disability that applied during this period.

As part of the review we consulted with an independent physician who is Board Certified in Internal Medicine and Cardiovascular Disease. Dr. Steven Borzak completed the peer review.

Dr. Borzak's review concluded in part:

> *There are no objective findings to support the diagnosis of either cardiomyopathy or heart failure. While the EF has been noted in case manager notes to be 20%, no study to this effect is provided or even mentioned in Dr. Faulkner's notes. Further, Dr. Faulkner's notes refer to occasional chest pain, and on one occasion shortness of breath with heavy exertion, but otherwise no symptoms to support a diagnosis of heart failure with more than a mild functional limitation (NYHA Class II). However, Dr. Faulkner's disability forms consistently state that the claimant is permanently and totally disabled due to cardiomyopathy, which is inconsistent with the office notes.*
>
> *Dr. Faulkner stated that the claimant had "severely depressed LV systolic function with an EF of 20-25%" but did not note the date of that assessment. He noted that the claimant has frequent ventricular ectopy on ECG and nonsustained VT on ICD. Dr. Faulkner opined that the claimant was "unable to walk 6 minutes without stopping due to dizziness and numbness since hip replacement. Patient has dyspnea on exertion…[and] 3 pillow orthopnea." He did not note if ventricular ectopy was symptomatic and did not note any sustained arrhythmia nor ICD shocks or therapy. Dr. Faulkner opined that the claimant was NYHA functional class III.*
>
> *Based on the written response from Dr. Faulkner, I have reached several conclusions. First, I accept that the claimant has NYHA FC III. This would still permit full time employment in sedentary capacity. Second, he noted that the claimant has numbness and dizziness with walking since hip replacement, but it is not clear and was not specified by him that this represents a cardiac limitation, an orthopedic limitation, or both. Third, the presence of ventricular ectopy is not impairing but does reflect the presence of cardiomyopathy. I conclude that my previous opinion is modified: 1. Dr. Faulkner's original and unaltered opinion is that the claimant is totally and permanently*

*disabled, but this opinion is not supported by his response, since class III patients irrespective of EF should be capable of sedentary work. 2. My prior opinion that the claimant could work a light occupation is modified. I now opine that the claimant is capable of full time work based on the available data, but only in sedentary capacity, with no walking, occasional standing, no professional driving, no lift/carry greater than 10 pounds ever and < 10 pounds occasionally.*

Benefits were terminated as of 10/30/2018, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation including consultation with and/or review of a written report from an independent physician who is Board Certified in Internal Medicine and Cardiovascular Disease. For complete details please refer to our letter dated 10/30/2018.

**Summary of First Level of Appeal**

On 11/20/2018, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your client's appeal, including but not limited to medical documentation from Dr. Dabov and Dr. Fulkner.

As part of the appeal review, we consulted with a health care consultant for review. The medical review concluded in part:

*Since the peer review, there has been no new significant illness or injury reported that would otherwise contribute to new medically reasonable work restrictions or limitations. No new physical examinations or diagnostic tests was provided. New hospitalizations or surgeries either for musculoskeletal diagnoses or cardiopulmonary diagnoses were not noted.*

*File does not indicate an instance of ongoing 100% nonweightbearing status, bedridden status or wheelchair dependency. File does not indicate an instance of constant, daily ADL assistance or that the claimant needs active hands on help from a secondary individual. 2/25/19 ortho exam noted the claimant to be in no acute distress (NAD) with no significant radiographic abnormalities to the left hip and the claimant to be navigating the room reasonably well.*

*There is insufficient documented evidence of significant or severe high grade joint weakness and instability, significant gait instability resulting in frequently witnessed falls, significant distal extremity circulatory, sensory and motor deficits, muscular atrophy, dexterity or coordination problems that would otherwise translate into a wholly diminished sitting, standing, walking, lifting and fingering functional capacity. 2/25/19 ortho exam noted the claimant to be in no acute distress (NAD) with intact motor, sensation, etc. and no deformities and indicated again, no significant radiographic abnormalities on the left hip xrays.*

*Although the 11/1/18 and 11/11/18 medical records from Dr Faulkner noted the claimant continues to have a severely depressed left ventricular function (LV) and nonsustained ventricular tachycardia (VT) along with having shortness of breath (SOB), problems standing, frequent dizzy spells, dyspnea on exertion (DOE) and orthopnea, the medical examinations prior to that date on 7/30/18 and 11/1/18 noted no clear, overt clinical signs of sustained heart failure or symptomatic arrhythmias. For example, the*

*examinations noted the claimant to have: intact vital signs, lung and heart sounds, heart rates (hr) and rhythm, neurological functions, with no syncope, swelling, clubbing or cyanosis.*

Our review of the medical documentation which included consultation with and/or review of a written report from a health care consultant, did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 10/30/2018. For complete details please refer to our letter dated 07/12/2019.

**Summary of Second Level of Appeal**

On 01/08/2020, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your client's appeal, including but not limited to, medical records from Physicians of Hearts, Dr. Lee Edwin Faulkner, Saint Francis Hospital, Physician Statement forms, DOT correspondence and American Heart Association documentation.

As part of the review on appeal we consulted with a health care consultant for review. The medical review states, in part:

*The EE stopped working on 8/7/15 for cardiomyopathy (heart muscle disease making it harder for the heart to pump blood to the rest of the body), high blood pressure, ventricular tachycardia (fast abnormal heart rate). He underwent an automatic implantable cardioverter defibrillator (AICD) Sept. 2015 due to depressed left ventricular function. He underwent a left total hip replacement March 2018 due to osteoarthritis (age related joint disease). He remains out of work for ongoing complaints of shortness of breath, frequent dizzy spells, abnormal sensation in his leg, and difficulty walking.*

*The EE saw Dr. Dabov (Orthopedics) on 4/23/18 6 weeks post-surgery for left total hip replacement. He is noted to be doing well with no major concerned and he is overall is pleased. Dr. Dabov opines the EE is disabled from medium or heavy type work and wants him to get involved in a good walking program and fitness, maybe with elliptical machine or stationary bike. There are no documents exam findings. Plan is to follow up in 10 months.*

*The medical records document a history of cardiomyopathy and severely depressed left ventricular function that is stable with medication management. AICD function is noted to be normal with non-sustained ventricular tachycardia. While it is noted the EE has a reduced ejection fraction, the medical exam documentation does not reflect significant abnormal findings or functioning that would preclude all work activities. The EE is asymptomatic without ongoing complaints of chest pain/tightness, shortness of breath, or dizziness. There is no documentation of frequent office visits, ER visits or any hospitalizations due to his heart condition. The R/L's outlined above by Dr. Borzak are supported. There is no new compelling evidence that supports progression of heart disease.*

*From an orthopedic standpoint, the medical evidence fails to demonstrate significant pain, decreased strength, altered sensation, or impaired gait to support R/L's that would preclude all work activities. There is no indication the EE requires an assistive device for*

*ambulation or any other activities. Left hip x-ray 2/25/19 showed no significant abnormalities. The EE has been encouraged to exercise by walking or riding a bike.*

A copy of the medical review was sent to you on 03/06/2020 to review and provide any written documents in response to these findings. No additional information was provided for review.

**Second Level Appeal Decision**

We understand that your client has been diagnosed with but not limited to cardiomyopathy, hypertension and ventricular tachycardia. However, our review of the medical documentation, which included consultation with and/or review of a written report from a health care consultant, did not support that your client was Totally Disabled beyond 10/30/2018. We therefore find that your client is no longer Totally Disabled under the terms of the policy.

Your client was seen by Dr. Faulkner (Cardiology) on 11/01/2018 for a follow-up. Your client reported shortness of breath with exertion and lying down, problems with standing and frequent dizzy spells. The examination documents normal heart and lungs and chest wall with no swelling, bruising, redness or swelling. The extremities is without deformities, clubbing, cyanosis or edema and no neurological deficits. An echocardiogram on this date showed severely depressed left ventricular systolic function with an ejection fraction of 25%. The plan is to continue with current medications with a follow-up in 3 months.

The office notes show your client was seen by Dr. Faulkner on 02/06/2019. He denied chest pain or shortness of breath and reported an episode of chest tightness after lifting items. The medical record states an AICD interrogation showed non-sustained ventricular tachycardia. The examination is unremarkable and unchanged from the prior visit. The plan is to follow-up in 6 months.

The medical records reveal your client was seen by Dr. Dabov on 02/25/2019, one year post left hip surgery. The examination describes your client as pleasant and in no acute distress. The exam notes he navigates the exam room reasonably well, somewhat uncomfortable with Stinchfeld's (resistance test) on the right, non-tender with maneuver of the left hip and some decreased sensation lateral femoral cutaneous nerve on the left. The motor and sensory exam is intact. There is limited range of motion of the right hip compared to the left, especially with internal rotation. The left hip x-ray showed total hip arthroplasty in good position and no signs of loosening or failure. Dr. Dabov opines your client is permanently disabled for heavy work. He is advised to exercise per Cardiology, mainly walking or riding a bike. He should not run, jog, or do heavy lifting and no squatting, bending, ladder climbing, etc. The plan for follow-up as needed.

The medical records do not reveal a significant physical and/or functional loss. The physical exams do not reveal severe findings. The medical findings do not support a neurological, musculoskeletal or physical functional impairment from performing in a sedentary occupation. There is insufficient documented evidence of significant or severe acute respiratory distress, severe joint weakness and instability, sensory and motor deficits, dexterity problems that would otherwise translate into a wholly diminished sitting, lifting, fingering, standing and use of upper extremities functional capacity. We understand your client may report symptoms; however the medical evidence does not support your client continued to meet the policy provision of Total Disability.

**Vocational**

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 215.367-010 | Assignment Clerk | $20.31/Hr. | Sedentary |
| 654.687-010 | Matrix Inspector | $16.31/Hr. | Sedentary |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

Review of your client's file indicates starting on 02/01/2016 your client was approved Social Security Disability benefits. While we do not dispute the Social Security decision, our information is more recent. Review of this more recent information does not support your client continued to meet the policy provision of Total Disability and produced a different decision. Therefore, we find your client is no longer disabled as of 10/30/2018.

We evaluated this claim by applying the provisions of the policy to the facts and opinions contained in the claim file. Other than what is set out in the policy, we did not rely upon any guidelines, internal rules, protocols, standards or other similar criteria in reaching this claim determination.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. In addition, your client has the right to pursue litigation and your client may request copies of records and other information relevant to the claim free of charge.

The employer's plan has a contractual limitations period of five years, which means that a lawsuit must be brought within five years after the date written proof of claim or proof of

continued disability was required. The date on which the contractual limitations period expires for this claim is 10/30/2023.

Please contact me directly at 402-361-7277 with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Theresa Henderson
800-423-2765 *7277
Specialist, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

REF #5597986

Chinese (Simplified)

注意：如果您说普通话，可以选择免费语言支持服务。 请拨打 1-800-423-2765.

Chinese (Traditional)

注意：若您講國語，可使用我們的免費語言支援服務。 請致電 1-800-423-2765.

Tagalog

Pansinin: Kung nagsasalita ka ng Tagalog, mayroon kang magagamit na mga libreng serbisyo ng tulong sa wika. Tumawag sa 1-800-423-2765.

Spanish

Atención: si habla español, tenemos disponibles servicios de apoyo con el idioma sin costo para usted. Llame al 1-800-423-2765.

Navajo

DÍÍ BAA AKÓ NÍNÍZIN: Díí bee yáníłti'go Diné bizaad, saad bee áká'ánida'áwo'dę́ę́' t'áá jiik'eh, ná hóló̜. Kojį' hódíílnih áǫįóóǫéąą́ǫąíę́ę.